We'll hear argument next in Case 18-1109, McKinney v. Arizona. Mr. Katyal? Thank you, Mr. Chief Justice, and may it please the Court. The State seeks to put James McKinney to death even though he's never once had a sentencing proceeding that complies with current law. There are two separate paths for McKinney to win. The path in Question 1 argues that the Arizona Supreme Court reopened McKinney's sentencing proceeding. The Ninth Circuit had earlier granted a conditional writ of habeas corpus and gave the State the option of either imposing a life sentence or seeking the death penalty again. The State chose the latter, which required brand-new State action in the form of new sentencing. The Arizona Supreme Court then did everything itself, just as it had in 1996. That was wrong. This Court's decisions in Ring and Hurst required a jury sentencing. If McKinney were sentenced today, no one doubts he'd be entitled to a jury trial. The State claims this would open the floodgates, but McKinney is not seeking to use Ring retroactively as a sword to challenge his earlier proceedings. Rather, he's saying that when the State conducts a new proceeding, that sentencing must comply with current law.  For example, a State could run a resentencing today in 2019 with a pre-Batson jury with race-based jury strikes. That can't be right. And the second path set out in Question 2 is for this Court to simply say that the Eddings violation in this case requires a remand to the trial court for sentencing and that the appellate court was wrong to perform that delicate task itself. This breaks no new ground. Indeed, this Court has on five separate occasions since the 1982 Eddings decision ordered resentencing for Eddings violations. Both paths get McKinney to the same destination, but they are separate. Question 2 is limited to the small universe of Eddings violations and how to fix them. And Question 1, by contrast, is about when sentencing proceedings lose their finality and are reopened. I'm fine waving the rest of my time. Well, what about Clemens? Because Clemens is a precedent of this Court that says that the appellate court can do re-weighing. Is that still good law? So we're on Question 2. And with respect to Question 2, Clemens is not an Eddings case at all. Clemens is a case about whether or not an aggravating circumstance can be subtracted from in a resentencing proceeding. That's a much easier case than what the – Erroneously including an invalid aggravating circumstance is fundamentally different from erroneously excluding a relevant mitigating circumstance. Why? I don't understand that. Because what the Arizona Supreme Court task had to deal with here was a full-blown re-weighing of everything, mitigating and aggravating circumstances, whereas subtracting one element is very different. And, indeed, we know this from Clemens itself, Justice Kavanaugh, because the very end of Clemens actually brackets this case. It says in a circumstance in which there – in which the appellate court is asked for the first time to weigh and determine evidence, that's different. In what case do they cite there? They cite this Court's decision in Caldwell. And in Caldwell, there's language after language saying appellate courts are ill-suited to making these determinations about a defendant and whether mercy should be given. They want to see the defendant in person. But that's a lot of the argument that Justice Blackmun raised in dissent in Clemens, of course, that the appellate court wasn't well-suited to do this, that this was really a mistake. Correct. And our point to you is twofold. Number one, you can just take Clemens as existing law. I do think it's – my second point is it's undercut by Ring and Hurst, but just – it may be existing law, but it's only existing law with respect to the subtraction of one aggravating circumstance. And Clemens itself, as I say, brackets this. And then the second thing is, is this Court, I think, has really changed the rules since Clemens because of Ring and Hurst. And we're not saying that Ring and Hurst overrule Clemens. That's not our position. But just that I don't think it should be extended any further than its facts. Sotomayor, let me give you a minute. Sotomayor, the Court below only reached your first issue, whether this was a new proceeding or not. It didn't reach the second. If it had, what does it have to do? Shouldn't we be remanding for that second question? You have presumed that it would have to do Ring. But my colleague, Justice Kavanaugh, has raised the question of why not. Shouldn't we be letting that be aired below? Shouldn't we just reach the first question and leave the second open and let it be completely aired? I mean, there is at least one Arizona case, Stiles, where the Court following Clemens basically said, it's only the appellate process that was at issue in the decision B-Flow. We can redo the appellate process without applying Ring and Hurst. I don't know if it would choose to do that again with new argument, but shouldn't we give it an opportunity to do that? Justice Sotomayor, I don't think you have to here. I mean, either way, whether you viewed question 2 or question 1, the result would be a jury trial, because Arizona law. Sotomayor, well, that's your argument. I'm just saying, shouldn't we let the appellate court make that decision? Well, I think the appellate court here has pronounced on question 1 and said if the No, if we disavow it over that pronouncement. I take your argument, as I did in your brief, that finality is not up to the State Court, or reopening finality is not up to the State Court, that it's up to Federal law. We have to define it for everybody. And if we told it to go through a new procedure, I don't know how that can't be a reopening. We told it the only thing they say we said, and I take your argument, is broader than that. But assuming I accept their position that what they were told to do is to reopen the appellate process, then they were wrong. Justice Sotomayor. That's your argument, right? Absolutely. Justice Sotomayor. It was a new proceeding. So now shouldn't we remand it for them to decide what new law they apply, if any? If you want to rule for us on question 1, we're obviously not going to be opposed to that. I don't think you have to rule on question 1 and not reach question 2, because the Arizona Supreme Court here did make a decision on question 2. Indeed, there was a whole dispute between us about what should the Arizona Supreme Court do. And briefs were filed. There's Joint Appendix pages 385 to 89. You have the State's brief on this saying, do this in the Arizona Supreme Court. And what we said is, no, Eddings requires under Caldwell, Clemens, all of those cases, a rescinded sentence. But they decided the question on a narrow ground that this was not a new procedure. If we disavow them that this was not a reopening, if we disavow their belief of that, then shouldn't we get an answer to the question they left open? I'm not sure that they left it open, Your Honor. What they did was arrogate to themselves the power to conduct this rescinded procedure. Well, at what stage of the direct appeal was there an error, according to the Ninth Circuit? There was an error. We're talking about there was an error both at the trial court and at the Arizona Supreme Court. But the Arizona Supreme Court conducted de novo review. Correct. Was it not? So wasn't the error identified by the Ninth Circuit an error committed by the Arizona Supreme Court? And more. So there's four answers here, Justice Alito. First, I know my friend has made this argument in the red brief at page 38 that this is the Arizona Supreme Court's error only. That's not the argument in the brief in opposition. And I'm not sure 15.2 allows them to make the argument when it wasn't in the brief in opposition. And that's particularly true here, because they told you in this 2016, when they did the review of the Ninth Circuit at page 30, they said that the error was actually in the trial court. All right. Well, I mean, put aside these preservation issues, which we can sort out for ourselves. If the Arizona Supreme Court, in the decision on direct appeal, had made it clear if it did not already, but assuming that the Ninth Circuit majority was right, if they had made it clear that they were taking into account the mitigation evidence, irrespective of whether there was a causal connection with the commission of the offense, would there have been an error? If there were no trial court error on Eddings, we wouldn't be here. Our position is no. All right. Assume there was a trial court error, but the Ninth Circuit said we're conducting de novo review, and we're going to do it the right way, and we take the mitigation evidence into account in the way that Eddings requires us to do. And I don't think this Court's precedents allow the appellate court to fix the trial court error. Decisions like Caldwell say that that's a decision for the sentencer at the trial court where they can see the defendant, confront the witnesses, and in cases like Arizona, there's a double circuit breaker function served by the scheme, because they have to win both no death sentence, they have to win a death sentence both at the trial court and at the Arizona Supreme Court. And what they're seeking to do here is fuse that into one thing. Just as long as it can be fixed on appeal, that's enough. And what decisions like Caldwell say is, uh-uh, for juries, for Eddings errors, you need to have a trial court consideration of that. Maybe I must have the facts wrong, but maybe. But look, there are the trial court says a long time ago, there are two aggravating factors, A and B. And then it looks at the mitigation, and the mitigation is he had a terrible childhood, and the trial court says, well, that only counts if it's caused by causally connected. That's a mistake. Then it goes to Arizona Supreme Court. And they say the same thing. They say one and two aggravating. And now we independently say this causal thing. You're wrong about the causal, says the Ninth Circuit. Back to the Supreme Court. Supreme Court says we will redo our reweighing. We will now not use causal. Why does it have to go back to the, if their law really is, if it really is, the Supreme Court can do this way, why does it have to go back to the trial court? Because in Eddings' cases, and in particular Caldwell, this court has said the same thing in the first place. At page 331, for example, you said, whatever intangibles a jury might consider in its sentence of determination, few can be gleaned from an appellate record. The mercy plea is made directly to the sentencer. There is no appellate version. Well, in Arizona, the sentencer is the appellate court. You could say there's something wrong with that. They'll say the sentencer is the appellate court. And what this court's decisions from Eddings on have said, no, you've got to remand to the trial court for determination and not to the appellate court. And by the way, Justice Breyer, in Arizona, State v. Bible says appellate courts can't take evidence and can't assess that kind of stuff. They're not institutionally equipped to do that. But we don't have to send it back because of Ring. Is that true? I mean, Ring, if it's not current law that applies, can they do this? Can they say, yes, it applies, correct, correct, but not to the aggravating part, because the aggravating part was done correctly under old law, and that's not what's at issue. Only the mitigating part's at issue. And they say that. So our position on question one is that they've conducted a brand-new sentencing proceeding, and therefore current law applies. That means Ring applies. And they haven't really gotten into, except for just saying, oh, there's no Ring violation, what the possible violations are. Our brief at pages 30 to 34 does outline that and says, you know, the weighing and the mitigating circumstance and the taking of an aggravating circumstance without a jury determination, any of those are separate Ring problems. So on question one, why would Ring apply? I mean, I guess the issue is, is the defendant getting a kind of windfall if Ring applies. The error here has nothing to do with Ring. And Ring only comes into the picture because the court is trying to create, is trying to correct a different error. Why is it that, you know, a non-retroactive rule should all of a sudden pop up and the defendant get the benefit of that rule? We don't think that there's a windfall here, and I'll explain why. But if you do, that would just push you into the direction of question two in which you don't have that feature. But with respect to windfall, I don't think that exists here. All our argument is, is that the State is conducting a brand-new proceeding, and that new proceeding has to comply with current law. So we're not trying to use that flaw, the Eddings flaw, to reopen old grievances and say, oh, there was this problem in the trial or that problem in the trial. It's just that the fact after the Ninth Circuit granted the conditional writ, the McKinney to death. And our problem is with that brand-new action, not with something that happened back before in 1993, but with what happened later. You're requiring a new jury sentencing 28 years after the murders and after the victim's families have been through this for three decades, and that's not required by Clemens. I take your point on that, but the whole point of Clemens, and I understand your view on this, and there was a passionate dissent. You've read it by Justice Blackmun, saying this was really quite wrong to allow the appellate court to do this. But the Arizona Supreme Court, presumably, aware of that law, did it itself. And why go back to a jury resentencing 28 years later? Justice Kavanaugh, I think in many of the Eddings cases, you've done exactly that. In cases in which there's a doubt as to whether or not the jury or the trial court considered mitigating evidence, you've sent it back to the trial court for resentencing and, indeed, for a jury determination. You did it in Eddings itself. You did it in Penry. You did it in Mills. Case after case, that is the result of this Court's precedence. And I think it's right because we're not talking about some technical violation here or something. We're talking about the heart of what capital punishment sentencing is all about, the weighing of mitigating and aggravating circumstances. Well, that was true in Clemens, correct? Correct. And, again, but in Clemens, it was just the subtraction of that one factor. And, indeed, they bracketed. But the big point of the dissent in Clemens was, look, this is something the fact finder should do, the jury should do, the fact finder, the trial court should do, which is hear all the evidence and do that weighing. And that seems quite similar. And I'd still take your point, but quite similar. Right. I think it's still different because it's just a much more limited question on appeal in that circumstance. Here, you are asking, and Arizona has a de novo, brand new, full re-weighing procedure. You're asking them, in that circumstance, to decide something that a jury has never seen or a trial court's never seen. And cases like Caldwell say, for mitigating evidence, mercy is really important. And to have the appellate court decide this really fundamental question without even having the defendant before it, without having the witnesses, that's something I think that's new. At least in Clemens, I should have said this, Justice Kavanaugh, at least in Clemens, there was a trial court determination at some point of the mitigating and aggravating circumstances. But the problem, why are you not asking for a windfall? Indeed, maybe a double windfall. You are effectively getting retroactive application of a ring, which is not retroactively applicable to anybody else. And not only that, what you really want, I gather, is a jury is not the correction of a ring error. It is another shot at convincing a jury to hold that somebody who is going to be found death eligible in all likelihood should nevertheless not get the death penalty. So it's a limited correction because the Ninth Circuit has invalidated the sentence. So it requires a new sentencing if they want the death penalty. It doesn't allow us to, for a windfall, for example, reopen guilt or innocence or anything like that. That was not touched by it. So it's limited to that. And in that sense, Justice Alito, it's kind of like when the court decides an ineffective assistance of counsel claim in a capital case. Yes, in one sense, I guess it's a windfall because lots of issues are reopened and there are not just one. But that is, I think, the result of a precedent that says, hey, you need a full resentencing. No, I mean, there the ineffective assistance of counsel can have all kinds of effects. I mean, you have an entirely formalistic argument. And maybe it's right. But why don't you just admit it's entirely formalistic? You want effectively a retroactive application of ring. And your real beef is not with the lack of a jury finding on eligibility. It's with the actual sentence that the jury has decided to impose. I couldn't disagree more profoundly with that. That is, what we're seeking here is not formalistic. What we're saying is that there is a new State action as a result of the Ninth Circuit's decision. We're not saying ring allows you to reopen, for example, the jury trial rights on guilt and innocence or anything like that. It's simply that they needed to come in and have affirmative State action if they wanted to have a death sentence, if they wanted to have a final judgment. They needed to come in and do a new proceeding in 2016. And our problem is with the new 2016 proceeding. At the risk of a formalistic question, normally States are the definers of their own procedures, their own State law. And I would have thought that normally, at least, a State gets to define when its proceedings are final, for State law purposes at least. What Federal law and what standard of review would apply to determine whether that State law violates the Federal Constitution? So, Justice Gorsuch, two big answers here. One is we're not in that circumstance because Arizona borrows from Federal law. There's no State law. Let's just say we are, okay? Stick with my hypothetical, if you don't mind. Sure. Okay. And with respect to your hypothetical, I think this Court has said from Richfield Oialat in 1946 that it is a Federal question, not a State question. In cases like Gonzales, you've said you don't want to have State-by-State definitions. I accept that there could be a Federal rule of decision for vindicating some Federal constitutional principle. But what would be that Federal constitutional principle? And wouldn't — whatever it is, you're going to say due process, equal protection. I'm looking forward to that. But whatever it is, I would have thought that it would have been a pretty deferential standard of review by this Court to maybe assess whether there are efforts to evade a Federal interest. I think this Court has said that the — that it is purely a Federal question and hasn't deferred in all of these different cases. Is it Federal common law? I mean, what's your source of law? I think it's Article III in the Supremacy Clause because — Well, the Supremacy Clause vindicates other Federal laws. Right. And if I could — I'm still waiting for what that other Federal law is. It is that if you allow State-by-State definitions of finality, allow them to define around the problem, then you have, for example, Batson problems and a return to the blink ladder world, which Justice Harlan was so worried about. The idea that you could just pick and choose when a State could apply current law and when they could say, oh, no — Right. I give up on that one. How about the standard review? So we — you know, we don't have a beef, really, with the standard review. I don't think this Court has ever given any deference. But even if you were to give deference in this case, you'd be giving deference to actually a State using a Federal definition because they never cite the Arizona Supreme Court when they say — Well, they say it's an independent procedure and that that's different in Arizona. Citing — And it's a kind of unusual procedure. No, no, no. They cite Justice Gorsuch, this Court's decision, and Griffith and Federal law entirely through and through. There is no cite to anything in Arizona, Michigan v. Long. Just suppose I disagree with you on that for a moment. You still want to win, right? So what standard of review would you have this Court apply in these circumstances? Well, we would say — Something stronger than rational basis review? We would say that it doesn't — that there is no reason for it to be deferential because you are talking about Federal constitutional commands. So you would just apply, you know, a de novo standard. But even if you wanted deferential, rational basis, whatever it is, here this is met. Here they are having a brand-new sentencing proceeding, the heart of what capital sentencing is all about. Mr. Katyal, a lot of your argument, you've talked about ineffective assistance examples, Batson examples, but not every violation of Federal law cuts across the entire proceeding as ineffective assistance or Batson. Correct. Do you have a line to draw between those that do and those that don't? Our line, Mr. Chief Justice, is if the new proceeding violates current law in that circumstance and in that circumstance only, is there a constitutional — our argument is limited to that. So you can't use — So there's no difference between sort of a surgical mistake that could be corrected and an entirely comprehensive mistake that infects the whole proceeding? That's a separate kind of safeguard against their open the floodgates argument because, as Justice Sotomayor, when she was on the Second Circuit, said in Burrell and many other courts like the Florida Supreme Court have said, if it's just a technical correction, if it's ministerial, then you're not reopening the final judgment. We absolutely agree with that. This is the polar opposite. But somewhere between ministerial and entirely comprehensive, there are things that are discrete and focused that suggest that a — the new proceeding, to give you the — is one that can be cured relatively easily. Right. And our point, the line is, and this is what Burrell and other cases say, if the new proceeding requires or exercise a discretion, then current law applies to that new proceeding. And, yes, you know, I agree with — you know, that there can be difficult cases in the middle. But this is the outlier. This is a brand-new, full-blown, 100 percent redo of what happened in 1996. So the part of Clemens that you say may still be good law, suppose that the appellate reweighing occurred not on direct review but on state habeas in the state Supreme Court. Is that a possibility in your view? So we don't think anything turns on the label state habeas or direct review or anything. It's fundamentally a substantive question. What's going on? And if — Could they do that, though, the Clemens reweighing in the state habeas proceeding? If they did the same thing here but called it collateral or habeas, it would make no difference whatsoever because ultimately — So I think your answer is no, they couldn't do that. It's ultimately a substantive question. Why not? Why can't a State do it in that fashion? Because then you'd give the State the power to relabel something collateral and evade Batson and things like that, and that's a return-to-link ladder and allowing different and disuniformity between cases. And that's fundamentally what I think this Court's finality jurisprudence in Jimenez is all about, trying to avoid. Mr. Dreeben. Thank you, counsel. General Skinner. Mr. Chief Justice, and may it please the Court, we believe there's actually only one path forward here for Petitioner. Effectively, QP1 resolves the resolution of this case, no matter which way it goes. If there's retroactive application of Ring and Hurst and all current law applies, Arizona does not contend that we have Ring-compliant aggravators here, and this would be a case that we would take back to the trial court. To the extent that there is no retroactive application, Clemens is the governing law, and what Arizona did fits entirely within Clemens. All of the cases involving trial court remands under Eddings from this Court that Petitioner has cited predate Clemens. Caldwell predates Clemens. All of them do. And there is no difference, to pick up on something that Justice Kavanaugh mentioned, we don't believe that where the record is built, which is critical here, where the record is built, credibility determinations have been made, the expert for the defendant has been credited in the trial court over the State's expert, that there would be any problem with the trial – with the appeals court conducting its own independent review. Caldwell in these cases discussed some sort of new evidence that was never heard. And counsel keeps mentioning things as if never seen. The evidence was never seen. The evidence has never been heard. But the PTSD expert testimony was credited. The existence of PTSD has been credited. These are determinations that have been made. And the only allegation coming out of the Ninth Circuit is that there was an error of law in how those facts and evidence were treated. Turning to question percentage 1, the language of the writ that was issued is critical here. It is a conditional writ that does not require vacating the sentence. The parade of horribles that comes forward out of Petitioner and Amici really turns on the idea that somehow a State could – all of them are answered by the idea that we admit if a sentence is vacated, that undoes the final judgment in a criminal case. That is the touchstone of what a criminal case is. Petitioner keeps mentioning that he doesn't want to challenge anything earlier in the case, but yet he cites cases in which this Court has held that the sentence is the judgment and that if you undo the sentence, then you undo the finality. Sotomayor If the Court had done this proceeding, it says it's not a reopening of the judgment, but if it had done this proceeding and changed its mind and said, you know, it wasn't causally connected and we were following our old rule, but it was fairly powerful evidence, and we think he shouldn't be subjected to death. Could they, unless they reopened the judgment, have modified the judgment? They can modify the judgment in the same manner that a 2255 court can modify a judgment, which even in – Sotomayor How? You have to open it to modify it, don't you? You have to undo it to change it. I've never heard of changing a judgment by not undoing it first. There are Petitioner cites, for example, the Burrill case out of the Second Circuit, and that's an example where this Court has recognized that even in the context of a direct appeal, where you are making a change and it's the only change that can be made, and here there's only two sentences available, we believe that if the Arizona Supreme Court had decided that the mitigation was sufficiently substantial It used a well-known exception in the law, a ministerial exception, and defined ministerial as being – since I wrote it, I know what I said – it defined ministerial as being with no discretion. You know, you enter the wrong date or you accidentally enter the wrong amount. If you had no choice but to enter X as opposed to Y, that's ministerial. But I've never heard of changing a judgment that's substantive unless you've reopened the proceeding. The 2255 context has cases that discuss – the 2255 Court is tasked with correcting a sentence and may well correct a sentence in connection with a collateral proceeding. But that supersedes the old one, right? We agree that it would supersede. I don't know that – All right. So let's go to the ultimate question. You can't – if something can be modified, if a judgment can be modified, it seems like more than semantics to say I didn't reopen it for reconsideration. You can't reconsider what I want to change. That standard would change 2255 proceedings into direct proceedings for purposes of retroactivity, and a 2255 proceeding, a sentence can be modified. And yet this Court has been very clear that a 2255 proceeding doesn't include application of current law. It is – retroactive rules aren't applicable. So this is a – this is an aspect that requires balancing the technical and the reality, but it is pretty clear that in charting a modern retroactivity – Could you go to my other question? It will be my last review. Assuming that we say that this was a reopening of the appellate procedure, do you think we would lose automatically? To the extent that this is a reopening of the direct appeal. Of the direct appeal. Of the direct appeal. Then we would be back on direct appeal and the Court would be overturning the State's conclusion about the nature of the proceedings, but that would place us into the realm of what this Court discussed potentially in Jimenez. So – but that would require looking past what the State has said about its own proceedings and even, as this Court has said in cases like Wall, the entire definition of what is collateral is a judicial reexamination of something. But General Skinner, the Ninth Circuit found that the Arizona Supreme Court erred on direct review of the trial court judgment. If they made an error on direct review, how can that error be cured without reopening the direct review? And they said you did the direct review wrong, do the direct review over. I think that one of the – was it Justice Hurwitz who said it was a do-over. It was a do-over of direct review. There was nothing collateral about it. It was – there was an error on direct review. So we sent it back for a new direct review. Two examples that come to mind, Justice Ginsburg, of where a collateral proceeding can resolve a constitutional violation. Here, for example, to the extent that the Ninth Circuit in Bank engaged in harmless error analysis as to the Eddings error, we recognize that they did not hold it to be harmless. But to the extent that they did that, if they had reached the opposite conclusion, that is a resolution, it's an identification of a constitutional violation. And a resolution of that violation in an entirely collateral proceeding. Similarly, when there's appellate ineffective assistance of counsel brought up in a collateral proceeding, the second – I don't understand how it's collateral when the Ninth Circuit said you erred not in a collateral proceeding, you erred in direct review. So do direct review over. So they didn't say do direct review over. But my point was that the Ninth Circuit in engaging in harmless error analysis is itself attempting to resolve a constitutional violation in a collateral proceeding. The Ninth Circuit is sitting in habeas. It's not a direct proceeding. They've identified an error in the direct proceedings. But they are demonstrating that in certain circumstances, this Court and other courts will – Kagan. Well, just on the same line, General, I mean, yes, it's a Federal habeas proceeding, but Federal habeas courts only have authority over State direct proceedings. They don't have authority over State collateral proceedings. They were reviewing a State direct appeal. And they said the sentencing was not done right. You have to do the sentencing again. So which sentencing are we talking about? We're talking about the sentencing in the State direct appeal. So whatever you call it, you know, people have talked about formalism. Whatever you call it, you're redoing, aren't you, the State direct appeal sentencing? So there's a couple of responses. The first one I would point out is to the extent that the Ninth Circuit believed that a new direct proceeding had to be engaged in, and the State instead engaged in a more narrow, which I will get to, and collateral proceeding, the answer wouldn't be that that proceeding has now become direct for purposes of retroactivity. The answer would be, just as occurred in the Stiers case, for Petitioner to return to the habeas court and say the conditional habeas writ was not complied with. You asked them to do X, and they only did Y, which is inadequate. It doesn't change the nature of the proceeding. And the Ninth Circuit allowed that, right? The Ninth Circuit allowed that exactly in Stiers. Petitioner in Stiers returned. The District of Arizona, the Ninth Circuit, both said this is a valid correction. This is not something that we believe contravenes the conditional writ. And that was in 2011 in Arizona, followed the exact procedure. Well, you're you've mentioned the language of the writ several times. Under your approach, I suppose that would be a focus of litigation, exactly what the language of the writ was going to be. Indeed, it was in Stiers. Petitioner returned to the District of Arizona and said, you said these words in your conditional writ, the exact words here, I might add, and that was inadequate to satisfy the writ, and so I need to have an unconditional writ granted. And that is exactly, if there is a concern that the Ninth Circuit demanded. But just, sorry to interrupt, but to be clear, and then the Ninth, that went to the Ninth Circuit, right? Correct. And the Ninth Circuit said that it was not a violation of the conditional writ. Correct. Correct. So that is, that again just goes to, if there is a concern about correcting a direct, an error that occurred in the direct appeals process through the collateral process, first, the existence of harmless error analysis for questions like Eddings in the habeas court acknowledges that there is some resolution and ineffective assistance in the Strickland prejudice prong. So that's. Sotomayor So are you arguing that we should dig this case, that we granted cert when we shouldn't have, that they should have done what they did in Stiers and gone back to the Ninth Circuit to find out if there was a violation first, and that we shouldn't be deciding that ourselves?  granted. I should note that by granting cert here, the court has jurisdiction over post-collateral, post-conviction proceedings. But I do believe that that is an inherent problem here. I, well, I think that is a basis for why this court must accept the collateral, the holding of the Arizona courts that the proceedings here were collateral. To the extent that there is a concern that a collateral proceeding is insufficient, that is not a question that is properly before the court. The court can't use that to second-guess the Arizona State courts. When you say that the proceedings were collateral, and putting aside the question of whether that gets you out of the obligation to apply new rules of constitutional law, is the labeling collateral, does that make a difference in terms of what the State Supreme Court actually does? It does, Your Honor. There are two chief categories of differences. First, as to the aggravation and mitigation analysis itself, the collateral second independent review is very different. In the first independent review, the Arizona Supreme Court engages in a searching analysis as to the basis of the aggravators and the mitigators. That leads, for example, in the Stires case and in the consolidated opinion here for the Headland. Maybe, I think you're answering a question I didn't ask. Assume that this had gone back to the State appeals court on direct review. In other words, it had gone up. The Ninth Circuit said that there was a mistake. The appeals court says, okay, we have to correct our mistake. Would it look any different if you labeled it direct as opposed to collateral? I think I'm trying to get at that, which is on direct, the court would look through and has in multiple cases, in the Stires case, in the consolidated opinion here, will reject an aggravator and will go through and make differences in terms of what is the aggravation and mitigation coming out of the trial court. But on the second time around, it's been very clear in Stires and in the Headland opinion in here, there's no revisiting of the aggravation and mitigation. And I'll point out that here. Kagan. I guess I'm asking you to do it the second time around both ways. In other words, it's gone up. The Ninth Circuit has said it's an error. One way the Ninth Circuit has said you have to reopen the direct proceedings. On that reopening the direct proceedings after the finding of error, would you go through the entire analysis all over again? Or would you just make the correction in the exact same way that you made it in the collateral proceedings? We don't have an example of that. All I can tell you is that when independent review is done in the context of direct, there is a searching analysis. Aggravators will be rejected. And in the three cases in which a collateral independent review has been used, the Court has been clear that they will not revisit aggravators and mitigators even when they are challenged. Here Petitioner challenged the existing aggravators, and the Court said we're not going there. I guess the intent of my question is to suggest that the correction, the analysis by which you say, okay, we have to correct the error, and now that we correct the error, we have to decide whether that does or does not mean that we need to change the sentence, that you would, you just have to do that either way. And the label is not what makes a difference. That you're essentially redoing what the State Supreme Court did on direct with the error corrected. So I'm trying to get at the idea that in a first direct independent review, there is much more done. I know, but the question is not the first one. The question is what happens after the Ninth Circuit says go correct the error. Okay? And if all you're doing in this supposedly collateral review is correcting the error as any other State Supreme Court would do when they're told to go correct their mistake in the direct appeal, then the fact that you label it collateral does not seem to make all that much of a difference. If the Court had, if the Court were to engage in the type of specific correction that occurred here and they said that it was really indirect, it's possible they would do that. I do think that based on past practice, if the Arizona Supreme Court believes that they are engaging in a full direct independent review as they would the first time around, then they will do, they will go in a far more searching analysis. They will address arguments that weren't even raised in the Headland companion case here in the consolidated opinion. An aggravator was struck for not even the reason that the petition, that that defendant had identified. It's possible that they could just go back and say, we're going to do a narrow correction, but we're going to do it in the direct context. We've never seen that. And I don't know that that's necessarily how they would approach it. They would view it as redoing from start to finish the independent review with all of the steps, including going to the aggravator. Scalia. Can I ask, I think, maybe the same question, but if this had come up on, to this Court, on direct, we'd said what the Ninth Circuit said. Eddings, Aaron, sent it back to the Arizona Supreme Court. Would that remand proceeding at the Arizona Supreme Court have looked different, I think, from the collateral proceeding that occurred here? I think that's getting at the question. Same answer? It's a hard one. I think it's the same answer. I believe, we believe the State's position would be that that would require a full-blown independent review of all the steps. But why would that be? I mean, usually when we say go correct your error, we just mean go correct that error. We don't mean you have to do everything else. I think it partly stems from the idea that there would have never been a – it's possible that they would have done a more narrow analysis. But just because of how many steps Arizona has put in place as safeguards in the death penalty context, an independent review the first time around will address issues not even raised. If a defendant's counsel stands up and says there are no sentencing issues, there will still be an analysis. I just suspect that's what they would do, because there would have been no finality. If it comes up on direct and this Court finds an error and it goes back down, I think they would have felt very much like there was no finality that needed to be deferred to. There was no aspect of the case that would have counseled toward a more narrow aspect of correcting the error. Here, when it's returned 20 years later, it's different. I'm still back at Clemens trying to figure this out. As I see it, I'm imagining we have two scale pans, all right? And over here in the A pan are all a whole bunch of aggravators. And over here in the B pan are a whole bunch of mitigators. And now it is the law in Arizona, imagine, that this weighing can take place in the Supreme Court of Arizona, period. Okay? Suppose that's the law. It's all fine. But they make a mistake about the B pan. There's some mistake which is found out later. So it's sent back to them. And you say, well, they can do the weighing anyway under Arizona law. That's it. They just have to redo it. But wait. In the meantime, a new constitutional principle has been announced. And the new one is, when you see what's in the A pan, that has to be found with a lawyer present. You see what's in the B pan? A lawyer has to be present. And lo and behold, this person had no lawyer at sentencing. Wouldn't it be obvious in that case that you can't do the weighing in the Supreme Court of Arizona without sending it back for a hearing where there's a lawyer? You see where I'm going? I see where you're going. It begins with the question of whether the new rule that's announced applies. If we have not disputed the new rule that is announced is that the A pan factors and the B pan factors have to be found with a lawyer present. All right. I mean, a lawyer has to you understand what I'm saying. Gideon V. Wainwright, step two or something. If Ring and Hurst apply to this case, we do not dispute. All right. I know. Why in heaven's name wouldn't they? I mean, of course, that's going to be the next thing I'd ask. But if I take your view that they don't apply, it sounds as if, well, I'm trying to make it as basic as I can. Hey, you have to have a lawyer. And by the way, when you do that reweighing, you're going to reweigh factors that were found without a lawyer. And I think it's obvious you couldn't do that. And if it's obvious you couldn't do that, Ring says about the same thing in Hurst. It doesn't say you have to have a lawyer present. But it does say a jury has to find those bits that are there in the APAN. And you see, that's that. And I want you to you don't want me to reason that way. And so I want you to tell me why not. A critical component here is the idea of what the Ninth Circuit identified, what the Ninth Circuit asked Arizona to do. Arizona followed from a conditional habeas writ that did not require vacating the sentence, that allowed the sentence to stand, engaged in new proceedings exactly as were done in Stiers, and were found to be acceptable by the Federal courts at the District of Arizona in the Ninth Circuit. And here, when the Arizona Supreme Court says that the error correction process we're engaging in is collateral in nature, the Court here, Federal courts, don't get to second-guess that. There may be consequences from that. And that's true if it's Gideon v. Wainwright. There may be. There is an exception. Ah, I see your little push there. I suppose it depends on the underlying determination whether those new rules are retroactive or not. In the one circumstance, you would be evading the rule against or your friend would be evading the rule against retroactivity. And in the other situation, I assume the State would not. Yes. Going back to the Gideon v. Wainwright example, there is an exception to the modern retroactivity framework for certain rules that may be so essential. And setting that aside, there may be consequences from the State of Arizona, the Arizona Supreme Court, labeling the procedures collateral. It may be that that is insufficient to satisfy the court that granted the habeas recourse. Breyer, I think, look, I'm getting this much better. I mean, I thought the Gideon v. Wainwright example, I thought, distinguishes Clemens because Clemens, there was no intervening rule that said the things in the two pans had to be found in a certain way. But there is here. But maybe this new thing doesn't apply in collateral. I think that's the point. Well, 100 percent. Yeah. I mean, going to Ring, Ring is not retroactive. If we are in a collateral proceeding, which we are, then it doesn't apply, just like it doesn't apply in a 2255. There may be other issues that arise from us using a collateral proceeding. That any of those issues are properly before other courts. And don't allow this Court to second-guess the nature of Arizona's proceedings. I guess, General Skinner, the real question that Justice Breyer is asking is call it reopening, call it redoing, call it whatever you want, but you're correcting what happened on direct appeal. And you're doing it now. You have to do it now. And now we know that Ring would apply. And it's a little bit strange to have a new proceeding where a rule that's been around for 20 years is not being applied. Going back to the harmless error, had the Ninth Circuit remanded to the Arizona Supreme Court for harmless error analysis, it is not obvious to me at all that that would be an inadequate resolution of a non-structural constitutional violation, and that you couldn't engage in a collateral harmless error analysis and thereby correct the problem. It is, again, this goes to the Supreme Court. Well, possible, but maybe the reason that you're going to the harmless error case instead of your own case is that in your own case, the error had to do with the fundamental question of sentencing, which is weighing the aggravated and mitigating circumstances and coming up with the right sentence. And that you're having to do again because the initial inquiry had a constitutional defect. And whether you say that you're doing it in a collateral proceeding or you say that you're doing it in a direct proceeding, I mean, essentially, you're having a new constitutional error. And you're having it in the year 2019 when Ring would apply to any other new proceeding. And the question is, why does your new proceeding not also have to comply with Ring? It would apply to any new proceeding that is part of a direct review process. To the extent that there was a third, fourth, fifth State post-conviction motion, to the extent that there is a long pending, as this occurred here many years in the District of Arizona and the Ninth Circuit, collateral proceeding, Ring wouldn't apply to any reanalysis or reexamination. Kagan. Yes, but it's a reanalysis of an analysis that was done in the direct proceeding. So it's a redo of the direct proceeding. Whatever you want to call that, it's a redo of the direct proceeding. I, I, the, any, the, as this Court noted in Wall, any collateral proceeding is going to invariably entail a reexamination of something that occurred in a direct proceeding. On the harm, keep going, I'm sorry. Well, so, and I think crucially here, once, our position is once a case is final on direct review, as this was 23 years ago, the touchstone for how you would undo that finality is to vacate the sentence. The Ninth Circuit and the District of Arizona knew exactly how to tell us that we had to vacate the sentence. On the harmless error point, to pick up on Justice Kagan's question, I think you were saying that harmless error could have been done by the Ninth Circuit on habeas, and so, too, a State habeas court could do the harmless error analysis. Is that correct so far? Yes. Okay. And then I think Justice Kagan's point gets at the question of what's, is this different in essence on some fundamental way from harmless error analysis? I think your answer is no, and can you, if that's true, can you explain that? I think it is different to the extent that we are providing additional process to the extent that a harmless error analysis is a type. It's very similar, I think, is what you're arguing. Yes. As a type, it is very similar, but I would never say that what we did was. In Clemens, they're analyzed back-to-back. Yes. Both options were left open by the Court as available paths for appellate correction of trial court error in Clemens. And we believe. Can I ask you a question about the error was in saying we won't count this mitigator because there was no causal connection. And then the Arizona Supreme Court says the causal connection still counts. It doesn't mean you can't consider the evidence, but it gets very little weight because there's no causal connection. And not taking the causal connection out of it is saying this mitigator is affected by the absence of causal. Causal connection is still playing a factor. Yes. And this goes to what Eddings does and doesn't require. Eddings specifically says that minimal weight or low weight can be given, that the And that, we believe, is entirely satisfied by the second independent review here. There's no stand-alone new Eddings error. Could you resist it, Justice Kavanaugh, a little bit when he was trying to equate the harmless error to this? And I think you started to say this was something more than harmless error review. Is that correct? My argument was that it was, this is, we believe this gives more process than harmless error review, but that as a type, this is very similar to harmless error and to the extent that harmless error is an available correction. So what's the more process? What's your definition of more process? The more process is not analyzing, as part of harmless error, not analyzing what would an imaginary person have done, what would an imaginary set of judges or jury done if this evidence had been considered, but instead allow briefing and say we're going to now look at the evidence and make our determination. And that's what happened. So it was a whole, how would it have differed from the original appeal? In an original appeal. In a direct. In an independent review on direct, there's two significant categories of differences. The first one that I didn't get to earlier is the scope of the sentencing issues that will be addressed in independent review. In the initial independent review here, the petitioner challenged the nature of the special verdict, that it was read instead of written. And the second independent review, the petitioner brought up a new stand-alone Eighth Amendment claim. That second time around, that's not revisited because the only analysis goes to the narrow aggravation and mitigation issue. The aggravators are still accepted. For example, for the co-defendant, the striking of the existing aggravator before stays. And all that's done is a. How would the process have differed for the issue that was identified as an error? If you focus down all the way on the consideration of the mitigation, there is a consideration of the mitigation in the same manner as the first time around. But that's zooming in past all the rest of the independent review and acknowledging that when you get down, that means we fixed it. We went back and looked at the thing that was identified as a problem, conducted the analysis without a causal nexus, and corrected the identified problem that the Ninth Circuit had said occurred in the Arizona Supreme Court. It's an appellate court correcting an appellate error on a built record. There's never been an allegation of something that was excluded from the record that might make this case very different. And this is, we think, a straightforward application of Clemens, and that this entire case is driven by Question Presented 1. And I would point out the petitioner has offered no grounding principle for what would replace direct versus collateral as the measure for retroactivity if this Court were to upend modern retroactivity. He has cited the phrase, anytime something is again subject to modification. But I don't think that's a fair statement of the Court's opinion in Jimenez. But more importantly, it would turn any 2255 proceeding in which a sentence was again at risk could again be corrected or vacated into a direct proceeding for retroactivity purposes.  Thank you, counsel. Five minutes, Mr. Katyal. Thank you. I'd like to begin with Clemens, which, of course, is only about Question 2. It doesn't answer Question 1 for reasons Justice Sotomayor said. So four things about Clemens. Number one, it's a very limited decision. It's a subtraction of one aggravating factor, as I was saying to Justice Kavanaugh. This is the opposite. This is everything happened. The Ninth Circuit, this is at Petition Appendix Page 59A, required a resentencing. And then the State came in and asked for a full-blown independent review, using that phrase four times. That's at Joint Appendix Pages 385 to 89. And that's exactly what the Arizona Supreme Court did. My friend said, oh, was a limited proceeding this and that? Absolutely not. It was more extensive, actually, than the 1996 first independent review, when they came back in 2016 and did it. They considered, for example, the aggravators and weighed them at Petition Appendix Pages 4A and 7A. Now, Justice Kavanaugh, you asked me about Justice Blackmun's dissent, which I had an occasion to look at again just now. And Justice Blackmun's dissent is about one thing, which is the consideration of aggravating factors. And he said that's something that should be done by the trial court. And, you know, whether he was right or wrong about that, that was only about aggravating factors. Our point to you in all of the decisions are about the consideration at the trial court of mitigating circumstances. So, for example, Mills at Page 375 says, quote, because the sentencer's failure to consider all of the mitigating evidence risks erroneous imposition of the death sentence, it's our duty to remand for resentencing. And there's case after case about that. Why is an aggravating circumstance different than a mitigating one? Because mitigating ones go to mercy, in which this Court in Caldwell has said that's the thing in which you need the jury to see, or at least the trial court, to see up front and personal as opposed to on a cold record. And that's why we don't think, you know, you should extend Clemens, particularly given this Court's decisions in Ring and Hurst and Haymond, all of which suggest that really juries have a fundamental role here. Now, with respect to question one, our point to you is that resentencing was required by the Ninth Circuit. They got a full-blown resentencing. We're not challenging. He has some argument about a dig. It wasn't in the briefs in opposition or below. We're not challenging the Ninth Circuit's determination. We're challenging the Arizona Supreme Court's decision here to not comply with the law of this Court, Eddings and Jimenez, which reopened the conviction. Now, if you accept their view, you're going to basically license a state to slap the label of collateral review on and allow them to conduct new sentencing proceedings that will evade Batson, that will undermine everything that Justice Harlan tried to do when he overruled Linkletter. And they'll be able to pick cases and say, oh, this time it won't be final, that time it will. That's a very dangerous thing. I agree there are difficult cases, and my friend ended with this, there will be some difficult cases in the middle. But this is not that. Eddings is the heart of what capital sentencing is about. And so if you allow a reweighing for the first time on an appellate court when there's never been one in the trial court, you're basically doing everything at that second stage, and that I think is profoundly, profoundly against what this Court's precedents are. He's right to say Jimenez doesn't directly control this case. That's not our argument. Our argument is Jimenez states a truism that when a case is final, as it was in 1996 when the court ruled, it can be reopened by voluntary action by the state. And here that action happened. The state reopened and set the clock back to 1996, and you see when you look at and compare side by side the 2018 opinion to the 1996 one, there's actually more extensive analysis. It's the opposite of harmless error review and the stuff he was talking about in his remarks. Are there any questions? Thank you, counsel. The case is submitted.